## Commonwealth v. Johnson

*Max Little, assistant district attorney,* for the Commonwealth.

*Robert B. McGuinness,* for defendant.

MOTT, *J.,* August 18, 1992—

### HISTORY

Henry Jay Johnson (the defendant) fled from the police in a 16.8 mile high-speed pursuit. The chase ended when the defendant's vehicle collided with an occupied residence. Trooper Thomas E. Josephson of the Pennsylvania State Police was the investigating officer. The trooper

observed the wild driving and the accident. In addition, at the scene of the accident, the trooper noticed an odor of alcohol and also detected the defendant's slurred speech.

After the accident, the defendant was in a semi-conscious state and an ambulance transported him to the Robert Packer Hospital. Upon his arrival, hospital personnel conducted a blood-alcohol test, pursuant to routine hospital procedure. Trooper Josephson testified that he did not follow the defendant to the hospital, but arrived later that evening to inquire as to the defendant's condition. At some point, Trooper Josephson completed a form requesting the blood-alcohol content results. The hospital complied with the request and gave Trooper Josephson the lab report indicating that the defendant had a BAC level of .1789. On December 12, 1991, the Commonwealth arrested the defendant and charged him with DUI pursuant to 18 Pa.C.S. §3731(a)(1) and (a)(4) and other traffic offenses. The defendant has filed an omnibus pretrial motion, and the parties have filed briefs on the issues raised by his motion. The matter is now before this court for disposition.

## DISCUSSION

### A. *Statutory and Constitutional Analyses*

The defendant argues that the results of the BAC test should be suppressed because they were not obtained in accordance with the statutory law of Pennsylvania. We disagree. A Superior Court case, *Commonwealth v. Hipp,* 380 Pa. Super. 345, 551 A.2d 1086 (1988), controls the case at bar. The facts of the *Hipp* case are remarkably close to the facts of the instant case.

In *Hipp, supra,* the appellant was involved in a car accident. Upon his arrival at the hospital, hospital personnel drew blood for medical purposes. They also tested

it, pursuant to the routine hospital procedure, for alcohol content. A police officer charged with the investigation of the accident arrived at the hospital shortly thereafter and spoke with the appellant in the emergency room. The officer noted that the appellant's eyes were bloodshot and his speech was slurred. In addition, after detecting a strong odor of alcohol on his breath, the officer requested hospital personnel to obtain a blood sample from the appellant to be tested for alcohol content. A member of the emergency room staff advised the officer that a test would be unnecessary as one had already been performed, and then volunteered the results of the test to the officer. The officer subsequently placed the appellant under arrest, issued *Miranda* warnings, and asked him to submit to a blood-alcohol test. The appellant refused and the officer left the hospital. Ultimately, the appellant was found guilty of DUI, in violation of §3731(a)(1) and (a)(4).

On appeal, the *Hipp* court held that the results of the medical blood test were admissible, even though an administrative regulation provided blanket confidentiality to all medical test results and records. According to general rules of statutory construction, the *specific* provisions of the Vehicle Code had to be construed as exceptions to the earlier enacted *general* administrative regulation. Thus, pursuant to 75 Pa.C.S. §3755, where a police officer has probable cause to believe that an individual operated a motor vehicle while under the influence of alcohol, and requests hospital personnel to obtain a blood sample for testing, *hospital personnel have an affirmative duty to perform the test and report the results to the police officer.*

A comparison of the facts in the *Hipp* case and the case at bar supports the contention that the BAC results

were obtained in accordance with the statutory law of Pennsylvania. In this case, as in *Hipp, supra,* the hospital conducted the BAC test as a routine part of emergency treatment *prior* to the arrival of any police officer. Further, *Hipp* plainly states, BAC results *are* admissible under the circumstances here, whether the tests were performed for "medical purposes" or at the request of a police officer. In this case, Trooper Josephson submitted a form to the hospital and documented his request for test results. The *Hipp* case presents the weaker case for BAC admissibility because the officer in *Hipp* did not document his request at all.

The defendant concedes that under 75 Pa.C.S. §1547(j), no physician, nurse or technician or hospital may administratively refuse to provide BAC results to a police officer at the request of the officer pursuant to this section. However, the defendant then asserts that Trooper Josephson's request in the instant case was not made under §1547. This is a rather bold and erroneous assumption and quite simply is not supported by the evidence. Once Trooper Josephson determined that there was probable cause to believe that the defendant had violated 75 Pa.C.S. §3731, the officer was authorized by §1547(a) of the Vehicle Code to request that hospital personnel obtain a blood sample for testing purposes.

## B. *Right to Privacy*

In addition, under current constitutional standards, Trooper Josephson was entitled to the results of the defendant's BAC test without first obtaining a search warrant. Here, although the defendant attempts to raise questions of constitutional import, none exist.

It is quite clear that there was no constitutional violation with regard to the actual administration of the blood test. In the instant case, as in *Hipp, supra,* the hospital administered the blood test on its own accord pursuant to internal hospital procedures rather than because the investigating officer requested it. The U.S. Supreme Court has consistently construed the protection of the Fourth Amendment as proscribing only governmental action. The court stated:

"[I]t is wholly inapplicable 'to search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85, 94 (1985), citing *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980).

There was no state action in this case, and the hospital acted independently in administering the blood test. According to the testimony, Trooper Josephson arrived at the hospital later in the evening after the BAC test had already been conducted, and the hospital acted as a private entity rather than as a government agent.

Moreover, the trooper's request for the BAC results did not violate the defendant's rights under the Fourth Amendment as incorporated through the 14th Amendment of the Constitution. In this case as in *Hipp, supra,* any intrusion upon the appellant's expectation of privacy was justified, as the officer had probable cause to believe that the appellant had been driving while under the influence of alcohol, and thus, had the right to request that hospital personnel obtain blood samples for testing purposes. See 75 Pa.C.S. §§1547(a), 1547(j) and 3755.

Another Superior Court case, *Commonwealth v. Cieri,* 346 Pa. Super. 77, 499 A.2d 317 (1985), also supports

the argument that the BAC results are admissible in the case at bar. In *Cieri, supra,* an ambulance transported the defendant to the hospital after a serious car accident. The court recognized that a "search" occurred when a sample of the blood withdrawn from the defendant was given to the police on their request, by hospital personnel. The court held, however, that the search was justified under the implied consent doctrine so that the results of that test were admissible. In *Cieri, supra,* circumstances known to the police at the time of the request gave them probable cause to believe that the defendant had been driving under the influence of alcohol or a controlled substance.

Furthermore, the *Cieri* court emphasized that the rule in *Commonwealth v. Quarles,* 229 Pa. Super. 363, 324 A.2d 452 (1974), did not apply. In *Quarles,* the court ignored probable cause and required a legal arrest before a suspect could be transported by the police for the purpose of conducting a blood-alcohol test. The *Cieri* court stated that the rule in *Quarles* was not applicable in a situation where it was *medical personnel,* not police, who transported the suspect to the hospital for the purpose of obtaining treatment.

The *Cieri* decision supports a conclusion that there was no violation of the Constitution in this case. As in *Cieri,* in this case the defendant was transported to the hospital in a semi-conscious state. Further, in both cases, the hospitals conducted the blood tests. In *Cieri, supra,* the court justified both the administration of the tests and the release of the information to the police under the implied consent doctrine and because probable cause existed. In both cases, the searches were reasonable and justified under the circumstances. In this case, there was

no violation of the defendant's constitutional right to privacy and the BAC test results are admissible.

### C. *Motion to Dismiss*

The defendant's motion to dismiss lacks merit because the record lacks evidence of prejudice against the defendant, based upon the delay in filing the instant charges. Rule 150 of the Pennsylvania Rules of Criminal Procedure provides as follows:

"A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, summons or warrant, or a defect in the procedures of this Chapter, unless the defendant raises the defect before the conclusion of the preliminary hearing and the defect is prejudicial to the rights of the defendant." *Id*

In the case at bar, the defendant waived his right to a preliminary hearing. Furthermore, at the suppression hearing, the defendant did not present any evidence which could allow the court to determine if *actual prejudice* to the defendant occurred. Therefore, under Rule 150, the defendant's motion to dismiss lacks merit.

### CONCLUSION

The Commonwealth complied with the Pennsylvania statutory scheme and the U.S. Constitution. Thus, the blood test results are admissible at trial. In addition, the defendant's motion to dismiss cannot be granted.

For the foregoing reasons, the court enters the following

### ORDER OF COURT

And now, August 18, 1992, in accord with the opinion filed this date, the defendant's omnibus pre-trial motions are denied and dismissed.